283

Argued and submitted September 30, 1998, affirmed February 10, 1999

STATE ex rel Thomas LOWELL,
*Respondent,*

*v.*

John EADS,
Jackson County Land Use Hearings Officer;
Laurel Prairie-Kuntz,
Director of the
Jackson County Planning Department,
*Defendants,*

*and*

JACKSON COUNTY,
a Political Subdivision of the State of Oregon,
*Respondent,*

*and*

Joseph ESTREMADO
and Joyce Estremado,
*Appellants.*

(950245Z2(3); CA A94379)

974 P2d 692

John R. Hassen argued the cause for appellants. With him on the briefs were Ervin B. Hogan, William F. Wilson and Horneck, Cowling, Hassen & Heysell.

James R. Dole argued the cause for respondent. With him on the brief was Schultz, Salisbury, Cauble & Dole.

Arminda Brown, Jackson County Counsel, waived appearance for respondent Jackson County.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

### ARMSTRONG, J.

Intervenors Estremado appeal from the judgment in this mandamus action under ORS 215.428(7)(b) in which the trial court ordered defendant Jackson County to approve plaintiff Lowell's applications for three forest dwelling permits. We affirm.

After the county failed to take final action on plaintiff's applications within the 120-day period prescribed by ORS 215.428(1), plaintiff invoked the mandamus remedy provided by ORS 215.428(7)(b). That section provides, *inter alia*, that the "writ shall be issued unless the [county] governing body shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations[.]" Intervenors argued to the trial court that the approval of the permits would violate three sections of the county's land use ordinance. The trial court summarized the issues and explained its ruling in the following "finding":

> "Intervenors presented evidence on three issues going to the adequacy of the subject applications: i) that the forest management plans did not meet with all of the requirements in the subject ordinance (LDO 212.060(3)); ii) that the dwellings were not located on the least productive buildable portions of the parcels (LDO 212.060(2)); and iii) that the subject parcels did not have adequate access (LDO 5.020(3)(a)). The Court finds that Relator's applications do not literally and technically meet the requirements of the Jackson County Land Development Ordinance, but that they substantially comply. The Court concludes that sub-stantial compliance is all that the relevant statute (ORS 215.428(7)) requires. Accordingly, the Court concludes that Intervenors did not meet their burden of proof under ORS 215.428(7) to show that the subject applications violate a 'substantive provision of the county * * * land use regulations'."

Intervenors contend on appeal that the trial court erred by applying a "substantial compliance" standard rather than requiring strict compliance with the three ordinance provisions.

■■ Before we address the merits of that argument, we turn briefly to a preliminary matter. The county appeared

below only to stipulate to the issuance of the writ. Plaintiff contends that, since the county and its governing body presented no defense, intervenors lack "standing" to raise some or all of the arguments that they presented in the trial court and here. Plaintiff's contention is answered adversely by *Wallace v. Board of County Commissioners*, 105 Or App 364, 804 P2d 1220 (1991). However, the putative inconsistency of an application with a local plan or regulation is in the nature of an affirmative defense in an action under ORS 215.428(7). Just as the "burden of proving" that defense would have been on the county if it had chosen to present it, the same burden is on intervenors as the parties asserting the defense. *See State ex rel Compass Corp. v. City of Lake Oswego*, 319 Or 537, 544-45, 878 P2d 403 (1994), *on remand* 131 Or App 647, 651-52, 886 P2d 1074 (1994). Further, as the appellants in this case, intervenors must affirmatively demonstrate to us that the trial court erred in rejecting their defense.

■     As noted, intervenors argue that the trial court applied an incorrect legal standard—requiring only "substantial" rather than absolute compliance—in ruling on intervenors' contentions that the granting of plaintiff's application would violate the three ordinance provisions.[1] However, assuming without deciding that the legal standard that the trial court applied under the statute was incorrect, that in itself is inconsequential: To constitute error, the incorrect standard must have been applied to some factual or legal

---

[1] For purposes of discussion, we assume the correctness of intervenors' characterization. We nevertheless note that that characterization is probably wrong in two respects. First, it appears from the context of the trial court's written and oral findings that the court did not use the language that intervenors assail to refer to all three of the provisions but only to section 212.060(3) and to intervenors' contention that plaintiff's forest management plan did not comply with that section. Second, although intervenors make much of the trial court's use of the words "literal" and "technical" noncompliance, it appears to us that the court may have been using those terms as euphemisms, instead of overtly describing intervenors' showing as "trifling" and "*de minimis*." It bears mention that, before ruling, the trial judge himself interrogated the witnesses and satisfied himself that the forest management plans in this case were identical in substance to those in a mandamus case involving three related applications, where the court had ordered the county to approve the applications. *See Estremado v. Jackson County*, 146 Or App 529, 934 P2d 515, *rev den* 325 Or 367 (1997).

We note further that intervenors' hypothesis that all three of the county provisions are "substantive," within the meaning of ORS 215.428(7)(b), is also among the things we assume without deciding.

showing that intervenors made and that, under the proper standard, *could* have resulted in a judgment more favorable to them. Intervenors do not demonstrate to us that they made any such showing.

Section 212.060(3) of the ordinance, the provision on which intervenors rely that requires the most extensive discussion, provides, in relevant part:

"3)  Statement of Management Objectives:

"A)  The applicant shall submit a statement of objectives for managing the land for forest use. Forest uses include: The production of trees and light processing of forest products and grazing land for livestock. This statement shall, at a minimum, include the following:

"i)  An accurate site plan map drawn to scale with approximate boundaries outlining forest use areas and vegetative types.

"ii)  A description of the existing condition of timber stands, access, density, and management needs.

"iii)  A plan for managing the property for forest uses which correlates to the forest use areas identified above. This plan shall show how the applicant intends to achieve the identified management objectives according to a time schedule.

"iv)  A statement of the adverse effects of the proposed management objectives or any special problems or adverse effects on nontimber resources (water quality, soil conservation, stream bank erosion, wildlife and fisheries habitat)."

The following passage from the statement of facts in intervenors' brief describes the showing that they inform us they made at trial as their effort to establish noncompliance with section 212.060(3):

"At trial, Laurel Prairie-Kuntz, the director of the Jackson County Planning Department, testified that the subject applications were deficient in several respects, because the forest management plans submitted did not adequately describe the properties and did not provide an adequately detailed management plan for the forest use on the subject lots.

"Dan O'Connor, an attorney and former staff employee with [the] Jackson County Planning Department, who had reviewed the subject applications at such time, likewise testified that the forest management plans were insufficiently detailed.

"[Plaintiff] was sent a letter from [the] Jackson County Planning with respect to all of these applications on January 11, 1993 informing [plaintiff] that the applications were deficient as a result of defective forest management plans."

There are two threshold difficulties with intervenors' position. First, they end their recitation of events with the planning department's January letter apprising plaintiff that his forest management plans and, therefore, his applications were inadequate. Nowhere in intervenors' brief do they inform us that, in response to the county's letter, plaintiff submitted revised forest management plans in April and that it was the revised plans and applications that are the subject of this action.

■■ That problem with intervenors' argument is not necessarily fatal in itself to their attempt to demonstrate error, because *some* of the testimony to which they refer *appears* to decry the revised plans as well as the original ones. However, the second problem is more serious. The testimony of the two county employees relating their views of the sufficiency of the plans under section 212.060(3) is of marginal relevance and is simply not sufficient in itself to demonstrate noncompliance. Whether the plans comply with the ordinance requirement is a question of law that the trial court and, in turn, this court can decide (with or without extrinsic assistance) by—and cannot decide without—consulting the plans themselves and the ordinance provision itself.[2] Intervenors make no argument to explain or substantiate their postulation that the plans fail as a matter of law to satisfy the requirements of section 212.060(3) in any particular respect or respects. Indeed, neither their opening nor their reply brief informs us of where in the record, if anywhere, the plans can be found. In

---

[2] In this mandamus action, we do not defer to any local body's or official's interpretation of the ordinance. *Compass Corp.*, 319 Or at 544; *State ex rel Currier v. Clatsop County*, 149 Or App 285, 290, 942 P2d 847 (1997); *Clackamas County v. Marson*, 128 Or App 18, 23 n 2, 874 P2d 110, *rev den* 319 Or 572 (1994).

the absence of such an argument and such information, intervenors cannot demonstrate that an error was made.

■ To illustrate the point by restating it from a slightly different perspective, this court will not reverse a judgment on the ground that the trial court applied an incorrect legal standard if the decisive question is a matter of law that, given the right arguments and information, we could decide for ourselves independently of the trial court's ruling and its reasoning. Intervenors have not made the necessary arguments or provided us with sufficient information to do so in connection with the forest management plans and section 212.060(3).

■ Intervenors next contend that the trial court erred in rejecting their contention that approval of the applications would violate section 212.060(2) of the county's ordinance. That section provides:

"The dwelling and accessory structures shall be located on the least productive, buildable portion of the parcel whenever possible, taking into consideration terrain, adverse soil and land conditions, access, vegetation, location, and size of the parcel."

As described in their opening brief, intervenors' showing at trial concerning that section was:

"[A witness] testified that the homesites for applications 92-113 and 92-114 were not located on the worst soils on the property. The homesite for 92-113 was on Class IV soil, despite the fact that the property also contained Class V soils. In application 92-114, there is likewise Class V soil on the property, but the homesite is located on Class IV soil."

Intervenors' evidence concerning the quality of the soils was insufficient as a matter of law to establish noncompliance with section 212.060(2). The comparison of the soil types on the parts of the parcels where the proposed dwellings were and were not to be placed could not be adequate in itself to establish that the dwellings would not occupy the least productive—much less buildable—parts, "taking into consideration terrain, adverse soil and land conditions" and

the other factors enumerated in the county's provision. Intervenors identify and we know of nothing that could even arguably support their apparent supposition that the soil classifications are *independently* decisive of what lands in the parcels are least productive for *forest* use.[3] Section 212.060(2) unambiguously provides that many other considerations are germane; indeed, it does not expressly refer to soil types at all, let alone suggest that that consideration alone must necessarily be or can be independently decisive of whether approval of an application would violate the section.

The last county provision on which intervenors rely, section 5.020(3)(a) of the ordinance, provides that "[a]ll lots and parcels created after October 28, 1980, shall abut" roadways of specified kinds and that the "County may approve lots and parcels which are created for nonresidential use only" for purposes enumerated in the section. According to their brief, intervenors' evidence aimed at showing a violation of that section was:

> "When purchased by [plaintiff] in 1978, the subject properties consisted of only one single lot. * * * By letter decision dated January 4, 1983, the Jackson County Planning Department permitted [plaintiff] to reconfigure the parcel as six lots[.] * * * It is undisputed that none of the three parcels at issue abut a [roadway] as defined in the Jackson County [ordinance]."

Section 5.020(3)(a) establishes criteria for and limitations on the creation of lots or parcels. It has nothing to do with applications, like those in question, for dwelling permits on existing lots or parcels. As with section 212.060(2) and (3), intervenors have not demonstrated on appeal that they made any showing at trial sufficient to establish that the granting of plaintiff's applications would violate section 5.020, under either the legal standard that they contend the trial court applied or the one that they argue it should have applied.

Affirmed.

---

[3] *Compare* Statewide Planning Goal 3, pertaining to agriculture.